IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAMAR E. DINKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0133-N |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Lamar E. Dinkins' motion to remand [11], Defendants Deutsche Bank National Trust Company ("Deutsche Bank") and JPMorgan Chase's ("Chase") motion to dismiss [4], and Defendant Ocwen Loan Servicing's ("Ocwen") motion to dismiss [8]. For the reasons that follow, the Court denies Dinkins' motion and grants in part and denies in part Defendants' motions.[1] The Court also grants Dinkins leave to amend.

## I. ORIGINS OF THE MOTIONS

This case concerns real property and a related mortgage.[2] On or around October 12, 2005, Dinkins purchased the property. Pet. 3 [1-3]. At that time, he signed two promissory notes with Long Beach Mortgage Company ("Long Beach") – one for $97,600 plus interest

---

[1]The Court grants Dinkins' motion for extension of time to file response to Ocwen's motion to dismiss [14].

[2]For purposes of the motion to dismiss, the Court accepts as true Dinkins' well-pleaded factual allegations.

ORDER – PAGE 1

and one for $24,400 plus interest. *Id.* at 3 & Ex. A. In early 2011, Chase and Ocwen notified Dinkins that they would foreclose on his property but stated that he could avoid foreclosure by paying off his notes. *Id.* at 4.

Dinkins arranged financing through a third party and notified Chase and Ocwen that he agreed to pay off both notes upon Chase and Ocwen's production of the original notes, among other things. *Id.* at 4 & Exs. B-C. In response, Chase and Ocwen stated that they were not obligated to produce the original notes and did not take steps toward processing Dinkins' proposed payoff. *Id.* at Ex. E & Ex. G [1-4]. Ocwen stated in its response that it was obligated to service the loan in accordance with the terms of the original $24,400-plus-interest note and attached a payment log purportedly for that loan. *See id.* at Ex. G. In its response, Chase included a copy of Dinkins' deed of trust to Long Beach securing the $97,600 loan amount. *See id.* at Ex. E.

Thereafter, Dinkins contacted Chase and Ocwen repeatedly via telephone and once more via regular mail to request, among other things, that Chase and Ocwen produce the original notes to show that they were the holders in due course of the notes. *Id.* at 5-6 & Exs. H-I. In their second written responses, Chase and Ocwen again declined to produce the original notes.[3] *See id.* at Exs. J-K.

On June 2, 2011, Brice Vander Linden & Wernick, P.C. ("BVW"), a Dallas law firm, sent a Fair Debt Collection Practices Act ("DCPA") notice to Dinkins on behalf of Chase

---

[3]It appears from the correspondence that Chase requested payment for the $97,600-plus-interest note while Ocwen requested payment for the $24,400-plus-interest note.

stating that Chase was successor in interest to Washington Mutual Bank, F.A., either as the current mortgagee or the mortgage servicer. *See id.* at Ex. L. Dinkins responded to BVW's letter via regular mail stating that he would payoff his loan amount once Chase produced the original note, among other things. *See id.* at Ex. N. He sent a similar letter to Chase. *See id.* at Ex. M. In response, Chase sent Dinkins a ledger of payments made on his $97,600-plus-interest note reflecting that Dinkins' first payment was on December 29, 2006. *See id.* at 7 & Ex. O.[4] BVW responded to Dinkins' letter by stating that Dinkins' payoff amount on one loan was $103,963.27 and on another was $7,266.02 and indicating where Dinkins should send his payment. *See id.* at Ex. Q.[5]

After receiving the responses, Dinkins made numerous calls to Chase and BVW in an attempt to resolve the issues. *Id.* at 8. After BVW indicated that they were going to foreclose on Dinkins' home on January 3, 2012, *id.*, Dinkins filed suit in state court alleging common law fraud and tortious interference and requesting declaratory judgments, a temporary restraining order, and damages. The state court issued a temporary restraining order barring the foreclosure. Notice of Removal, Ex. C-4, pp. 75-78 [1-4]. Chase and

---

[4]The Court notes that the ledger Dinkins filed along with his petition is missing at least one page because it begins with "transaction 5" on March 30, 2007. *See* Pet., Ex. O. However, because the Court must take as true all well-pleaded facts in Dinkins' complaint and because Chase and Ocwen do not refute that Chase's ledger reflects the first payment on December 29, 2006, the Court recites this allegation as Dinkins does in his petition.

[5]Dinkins alleges that because Chase's ledger reflects payments beginning in late 2006 rather than in 2005, Chase is mistaken that this is the correct ledger for Dinkins' note, or, alternatively, that Chase's ledger fails to credit him for at least fourteen monthly payments. Pet. at 7. Dinkins further alleges that BVI's $103,963.27 payoff amount is incorrect in that it fails to reflect the $47,790.40 in payments reflected in Chase's ledger. *Id.* at 8.

Deutsche Bank removed the action to this Court on January 13, 2012 [1].  Dinkins moved to remand and Defendants moved to dismiss.

## II. THE COURT DENIES DINKINS' MOTION TO REMAND

### A. General Remand Standard

A defendant may remove a state court suit only if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a).[6]  The removing defendant bears the burden of establishing federal jurisdiction.  *E.g., Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998).  A court must determine whether jurisdiction exists by considering the claims in the plaintiff's state court petition as it existed at the time of removal.  *E.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  However, "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

---

[6]The Court notes that on December 7, 2011, the President signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), which amended Chapter 28 of the United States Code.  *See* 28 U.S.C. § 1, *et seq.*  However, the Court will cite to, and apply, Chapter 28 as it existed prior to that time because the amendments apply only to cases commenced after January 6, 2012.  *See* JVCA, Pub. L. No. 112-63, § 205. An action "commences" in Texas when the plaintiff files suit.  *See* TEX. R. CIV. P. 22; *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000) (citing TEX. R. CIV. P. 22).  Dinkins filed suit on January 3, 2012 [1-3], three days before the new law became effective.

### B. The Court Has Removal Jurisdiction

Dinkins moves to remand on the basis that, in their notice of removal, Chase and Deutsche Bank alleged only Ocwen's residence, not its citizenship.  As such, Dinkins continues, the notice of removal is procedurally defective.

"There is nothing in the removal statute that suggests that a district court has 'discretion' to overlook or excuse prescribed procedures." *Smith v. Union Nat'l Life Ins. Co.*, 187 F. Supp. 2d 635, 639-40 (S.D. Miss. 2001).  However, a court may remand a case on the basis of a procedural defect identified in a motion to remand only if it is filed within thirty days after the filing of the notice of removal.  *See Coury v. Prot*, 85 F.3d 244, 252 (5th Cir. 1996) (citing 28 U.S.C. § 1447(c)).  Here, Dinkins asserted his procedural argument thirty-nine days after Chase and Deutsche Bank removed.  Accordingly, Dinkins waived his procedural argument.

However, the Court notes that all parties agree that there is complete diversity among them – Dinkins is a citizen of Texas; Chase is a citizen of Ohio; Deutsche Bank is a citizen of California; and Ocwen is a citizen of Georgia and Florida.  Notice of Removal 4 [1]; Mot. Remand 2.  The parties also do not dispute that the amount in controversy exceeds $75,000.  Notice of Removal 3; Mot. Remand 1-2.  Thus, the Court has removal jurisdiction.  Accordingly, the Court denies Dinkins' motion to remand.

### III. THE COURT GRANTS IN PART AND DENIES IN PART DEFENDANTS' MOTIONS TO DISMISS

#### A. Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face" – i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Twombly*, 550 U.S. at 556, 570 (2007); *see also Aschroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will . . . be

a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 677-78.

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting

ORDER – PAGE 7

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Dinkins' "Show-Me-the-Note Theory" Fails as a Matter of Law

Dinkins' overarching theory of the case is that Defendants' erred by refusing to produce the original note.  In response to this assertion, Defendants argue that the law does not require them to produce the notes prior to foreclosing.  *See, e.g.*, Defs.' Chase & Deutsche Bank's Br. Supp. Mot. Dismiss 8-9 [5].  Defendants are correct.

Cases in this Circuit have repeatedly rejected the contention that a mortgagee "must prove it either owns or holds the note prior to instituting foreclosure," known as "the 'show-me-the-note' theory."  *Plummer v. CitiMortg.*, 2012 WL 1438211, at *5 (N.D. Tex. 2012) (McBryde, J.) (collecting cases); *see also, e.g.*, *Wells v. BAC Home Loans Servicing, L.P.*, 2011 WL 2163987, at *2-3 (W.D. Tex. 2011).  "A party is not required to produce the promissory note prior to foreclosing under chapter 51 of the Texas Property Code."

*Plummer*, 2012 WL 1438211, at *5.[7]  Thus, Dinkins' overarching theory is incorrect as a matter of law.  The Court goes on to analyze Dinkins' claims in this context.

### C. The Economic Loss Doctrine Does Not Bar Dinkins' Tort Claims

Defendants argue that the economic loss doctrine bars Dinkins' tort claims.  In Texas, the economic loss rule acts to bar tort claims for damages where the plaintiff bases his damage request solely on the subject of a contract.  *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 538 (5th Cir. 2003) ("[I]f damages arise solely from the loss of the contract benefit, the claim sounds only in contract.  Other damages, such as property damage or personal injury, can be recovered in tort." (internal citations omitted)); *Cf. Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex. 1947) (holding that where defendant negligently repaired plaintiff's water heater, which later caused a fire that destroyed plaintiff's house, plaintiff could recover under tort theory).  Defendants argue that Dinkins seeks only damages related to his loan agreements, which are contracts.  However, Defendants are mistaken.

Both the deed of trust and the notes Dinkins attached to his petition state that they are between Dinkins and Long Beach.  Pet., Exs. A, B, E.  With no allegations of a contractual

---

[7]This is so because a mortgagee or servicer can nonjudicially foreclose under the deed of trust.  *See* TEX. PROP. CODE §§ 51.002, 51.0025.  Dinkins nowhere challenges Defendants' authority to foreclose under the deed of trust – he neither alleges that Long Beach did not assign the deed of trust to Defendants nor that Long Beach invalidly assigned the deed of trust to Defendants.  Accordingly, Dinkins has failed to allege that Defendants do not have the authority to foreclose.

relationship between Dinkins and Defendants on the face of Dinkins' petition,[8] the Court cannot simply assume there is one.  Accordingly, the economic loss rule does not apply at this stage to bar Dinkins' tort claims.[9]

### D. Dinkins' Fraud Claim Fails

In order to plead a fraud claim, a plaintiff must allege facts that show that (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the defendant made the representation with the intent that the plaintiff should act upon it, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff thereby suffered injury.  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am. & Four Partners, LLC*, 341 S.W.3d 323, 337 (Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)).

Rule 9(b) of the Federal Rules of Civil Procedure requires parties to state their allegations of fraud with particularity.  FED. R. CIV. P. 9(b).  "Pleading fraud with particularity in [the Fifth] [C]ircuit requires 'time, place[,] and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir.

---

[8]Dinkins does not allege assignment.

[9]The Court's ruling certainly does not preclude Defendants' reurging this argument with appropriate evidentiary support.

1997) (last alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  In essence, Rule 9(b) requires a party to state "the who, what, when, where, and how."  *Id.* at 179.  "What constitutes 'particularity' will necessarily differ with the facts of each case."  *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

Dinkins does not successfully plead a fraud claim.  Dinkins alleges that Ocwen and Chase misrepresented to him that they were the mortgagee or servicer of his mortgages.  Pet. 8.  He further alleges that Chase and Ocwen's failure to provide the original note demonstrates that they are not the mortgagee and/or servicer of his mortgages.  *See id.* at 9. However, as discussed above, the law does not require Defendants to produce the original note in order to foreclose under the deed of trust.  Accordingly, Dinkins' fraud claim fails, and the Court dismisses it.[10]

### E. Dinkins' Tortious Interference Claim Fails

In Texas, tortious interference exists where (1) there is a contract, (2) defendants willfully and intentionally interfered with the contract, (3) the interference proximately caused the plaintiff's damages, and (4) the plaintiff experienced actual damages or loss.  *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  The plaintiff must establish

> that the defendant took an active part in persuading a party to the contract to breach it.  Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach.  It is necessary that there be some act of interference or of persuading

---

[10]Additionally, Dinkins nowhere alleges that Deutsche Bank had any part in the alleged fraud.

a party to breach, for example by offering better terms or other incentives, for tort liability to arise.

*Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App. – Eastland 1992, writ denied) (quoting *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 803 (Tex. App. – Hous. [1st Dist.] 1987, writ ref'd n.r.e.). A defendant is justified in interfering with a plaintiff's contract if it exercises (1) its own legal rights or (2) a good faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996)).

Dinkins also fails to successfully plead a tortious interference claim. Dinkins claims that Chase and Ocwen interfered with his contract with Long Beach by demanding payment from Dinkins where they had no right to do so. *See* Pet. 10. He alleges that because of this interference, "his earlier payments [were not] applied to the mortgages" and he "has been subjected to paying extra interest and late fees he would not have otherwise had to pay had his payments been properly applied." *Id.* The Court cannot make sense of these allegations. First, Dinkins is subject to interest and late fees because he failed to make required mortgage payments, not because Chase and Ocwen allegedly interfered with Dinkins' contract with Long Beach. Further, it is not clear from Dinkins' petition how Chase and Ocwen's demand for payment – even if unauthorized – caused the misapplication of earlier payments.

Accordingly, Dinkins has failed to allege a tortious interference claim, and the Court dismisses it.[11]

### F. The Court Dismisses Dinkins' Declaratory Judgment Requests

Dinkins requests the following declarations: that (a) any attempt to foreclose is an action to collect a debt and, therefore, that Defendants must produce Dinkins' original notes to Dinkins prior to proceeding with foreclosure; (b) Defendants have acted unconscionably toward Dinkins; and (c) Defendants' conduct constitutes fraud, negligence, and intentional misrepresentation. Pet. 11. The Court dismisses Dinkins' requests.

The Court dismiss Dinkins' first request because, as discussed above, the law does not require Defendants to produce the original note to Dinkins prior to foreclosing. Next, the Court dismisses Dinkins' request that the Court declare Defendants' actions unconscionable. Unconscionability is a contract doctrine that has no applicability to this case. *See generally* BARBARA SLOTNIK, 14 TEX. JURISPRUDENCE, CONTRACTS § 178 (3d ed. 2012) ("In general, the term 'unconscionability' describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms." (footnotes omitted)). Thus, it is an inappropriate request for the Court to entertain in the context of this suit, and so the Court dismisses the request.

Finally, the Court dismisses Dinkins' request that the Court declare that Defendants' conduct constitutes fraud, negligence, and intentional misrepresentation. Dinkins' fraud and

---

[11]Again, Dinkins made no allegation that Deutsche Bank tortiously interfered with Dinkins' and Long Beach's contract.

intentional misrepresentation requests are redundant of Dinkins' fraud claim, which the Court has dismissed.  Because Dinkins has failed to plead allegations amounting to fraud, the Court dismisses the requests.  And the Court declines to consider Dinkins' request regarding negligence because it is conclusory under *Twombly*, especially given that all of Dinkins' factual allegations point toward intentional – not negligent – conduct.

CONCLUSION

The Court denies Dinkins' motion to remand and grants Defendants' motions to dismiss.  However, the Court grants Dinkins leave to amend his petition to address the deficiencies that the Court has identified in this Order.  *See, e.g.*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (noting that Fifth Circuit precedent supports the premise that "granting leave to amend is especially appropriate" where district court dismisses plaintiff's complaint for failure to state a claim and explaining that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Garcia v. Bank of N.Y. Mellon*, 2012 WL 692099, at *4-5 (N.D. Tex. 2012) (Fitzwater, C.J.) (allowing plaintiffs to amend complaint in foreclosure action). Accordingly, Dinkins may file an amended complaint within twenty-one (21) days of the date of this Order.

Signed August 30, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 15